IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROOSEVELT THOMAS, JR.,           :
AIS #115280                      :
      Plaintiff,                 :
                                 :
vs.                              :        CIVIL ACTION 15-68-WS-M
                                 :
CORIZON, INC.,                   :
      Defendant.                 :
                                 :

REPORT AND RECOMMENDATION

This § 1983 action, filed by Roosevelt Thomas, Jr., an
Alabama prison inmate, proceeding *pro se,* was referred to
the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and
Local Rule 72.2(c)(4), and is now before the Court on
Plaintiff's Complaint (Doc. 1), Defendant Corizon, Inc.'s
Answer and Special Report (Docs. 14, 15), which the Court
has converted into a Motion for Summary Judgment (Doc. 17),
and to which Plaintiff has responded.  (Doc. 24).  After
consideration of the pleadings, Motion, and Response, and
for the reasons set out below, it is recommended that
Defendant's Motion for Summary Judgment be granted and that
Plaintiff's action be dismissed with prejudice.

I.   Facts and Proceedings

Plaintiff is an Alabama prison inmate serving a 25-
year sentence at J.O Davis/Fountain Correctional Facility

for robbery and theft of property.  (Doc. 1 at 6).  Though
Plaintiff only officially names Corizon, Inc., as a
defendant, his Response "blames" Nurse Craft and "Kenneth
Dovey, Vice President of Operating, Corizon Health Inc.,"[1]
for his alleged constitutionally violative medical care.
(Doc. 24).  Corizon, Inc., is the entity that provides
medical care to inmates on behalf of the Alabama Department
of Corrections ("ADOC"); Nurse Craft treated Plaintiff for
his alleged injury.  Despite not being officially named
defendants, the Court will liberally construe Plaintiff's
Complaint and Response as though Nurse Craft and Vice
President Dovey are officially named defendants.
Plaintiff's Complaint is written in a day-by-day, play-by-
play format, which the Court summarizes as follows.

On December 22, 2014, Plaintiff was working in the
kitchen when he slipped and fell twisting his ankle causing
swelling and a fracture.  Plaintiff's broad-brush complaint
is that he was delayed adequate medical care after
fracturing his ankle; however, he does state that he was
treated in the Infirmary, where he received ibuprofen and
an analgesic balm for his ankle, but he does not specify on

---

[1] A cursory review of Corizon's website does not
indicate that there is a Kenneth Dovey acting as vice
president of operations; regardless, the Court will treat
Plaintiff's Complaint as having named the proper vice
president of Corizon.

what date this treatment was given.  (Doc. 1 at 8).  On

December 24, 2014, Plaintiff visited the health care unit

where he was seen by Nurse Craft.  (Doc. 15-1 at 3).  Nurse

Craft evaluated Plaintiff; his vitals were normal except

for slightly elevated blood pressure.  Nurse Craft provided

Plaintiff with temporary work restrictions[2] until he could

be seen by the nurse practitioner on December 29, 2014.

(*Id.*).  When Plaintiff asked for a wheelchair, crutches, or

a cane, he alleges he was told there were none available

and he would have to find them himself if he wanted to use

them.  (Doc. 1 at 9).  Plaintiff states that all he could

do was "suffer and mourn until Monday," and his suffering

was such that his "chest and head feels funny . . . I hope

I don't die.  I need to be rushed to a hospital this very

moment."  (*Id.*).

On December 29, 2014, Plaintiff was seen by nurse

practitioner Shawn Geohagan, who ordered an x-ray of his

ankle.  (Doc. 15-1 at 4).  Geohagan also prescribed

Naproxen for thirty days, and crutches for fourteen days.

(Doc. 15-1 at 5).

---

[2] Plaintiff's work restrictions included no standing
for more than five minutes, no team sports, no running, no
jumping or jogging and no weight lifting.  Plaintiff was
also given a bottom bunk profile.

The x-ray was taken, and the radiology report reflected a "fracture of the lateral malleolus.  There is mild displacement of the distal fragment.  There is no apparent callus formation.  There are no gross lytic or blastic lesion in the bones.  There is no dislocation. . . . [and] no radiographic evidence of acute disease in the left foot."  (Doc. 15-1 at 4).  Dr. Timothy Iliff, who is a licensed doctor of medicine, viewed Plaintiff's radiology report and placed a fiberglass cast on his left ankle, which remained in place for 7 weeks until February 17, 2015, when it was removed by Dr. Iliff.  (*Id.* at 5).  A follow-up x-ray was then ordered and taken on February 19, 2015.  It indicated "a healing fracture involving the lateral malleolus with no displacement.  The joint alignment is maintained.  There is associated soft tissue swelling. . . . Improved from December 29, 2014."  (*Id.*).

On March 16, 2015, Plaintiff complained again to Nurse Practitioner Shawn Geohagan that he was experiencing swelling and discomfort in his left ankle.  (*Id.*).  Another x-ray was ordered and Plaintiff was prescribed anti-inflammatory medications and a renewed crutches profile.  (*Id.* at 6).  This third x-ray reflected that "ossification is normal for the left foot, including the tarsal bones seen.  There is no fracture, dislocation or soft tissue

4

swelling. . . . Ankle swelling but no acute fracture."
(*Id.*).  On March 30, 2015, Plaintiff had a follow-up visit
with the nurse practitioner who told him that only slight
swelling was present, and that he no longer needed to use
the crutches.  (*Id.*).  This was the last time Plaintiff
sought medical care for his left ankle.

Plaintiff contends that the five days between his
initial visit with the nurse on December 24, 2015, and his
visit with the nurse practitioner and doctor on December
29, 2015, constitute a constitutionally unacceptable delay
in medical care.  (Doc. 1 at 10).  He states that the
"staff here in the infirmary don't [sic] seem to care or
just can't do anything until I see the person as for as
[sic] being x-rayed. . .  I guess my pain don't [sic]
deserve any type of urgency to be taken care of.  It don't
[sic] seem to be an urgent matter.  The state should have
people on-call to handle these type [sic] of situations
because an injury like this could worsen and cost [sic] me
to lose my leg."  (*Id.* at 9-10).

Plaintiff also alleges "the administration here at
J.O. Davis . . . might retaliate against me due to my
complaints."  (*Id.* at 12).  Plaintiff presents no facts or
circumstances in which he has already been retaliated
against by any staff member at J.O. Davis; therefore, these

allegations are purely speculative and do not warrant any analysis by the Court.

For relief, Plaintiff requests to be "reward[ed] n money for my suffering and to try and make things better for the treatment of inmates as for as [sic] medical situations are concerned . . . . Alabama denies claims that it fails to give prisoners adequate medical care." (Doc. 1 at 7).

Defendants answer Plaintiff's Complaint by raising the defenses of, including, but not limited to, waiver, immunity, and failure to state a claim upon which relief can be granted. (Doc. 14). Defendant further responds to Plaintiff's allegations by providing a sworn affidavit from the treating physician, Dr. Timothy Iliff, and medical records evidencing the extent and frequency of care that Plaintiff received. (Doc. 15-1).

Dr. Iliff, via sworn affidavit, and based on the December 29, 2014, x-ray taken, asserts his medical opinion that the mild fracture in Plaintiff's left ankle was not worsened or accentuated by the five-day delay that Plaintiff contends is unconstitutional. (Doc. 15-1 at 4-5). Dr. Iliff also states that Plaintiff's fracture would have healed uneventfully, which it did, after he wore the provided fiberglass cast for three months. (*Id.* at 7).

In conclusion, Dr. Iliff attests that in his professional opinion, based on his review of the medical records and personal knowledge of Plaintiff, and through his education, training and experience, that Plaintiff's care and treatment by him, as well as by the medical staff at J.O. Davis Correctional Facility, was always within the standard of care prescribed by physicians practicing medicine in the state of Alabama.  (*Id.*).

Plaintiff replied to Defendant's Motion by "blaming" Nurse Craft and the Vice President of Corizon, Kenneth Dovey.  Against Nurse Craft, Plaintiff claims she failed to do a body chart on his injured leg, made him find his own crutches, caused him to suffer great pain because of the delay, and treated with him deliberate indifference because she knew about his serious medical need and failed to respond reasonably to it.  (Doc. 24).

Against Corizon Vice President Kenneth Dovey, Plaintiff states that he "failed to operate [Corizon] with proper health care, (*Id.* at 4), and that Dovey's supervision essentially allowed Plaintiff to be "delayed medical care that could have eased a lot of the pain if there had of [sic] been a physician on duty during the Christmas holidays I suffered.  Everything else as for as

[sic] being treated was after the delay, pain, emotional and mental pain and tears I cried out for help."

## II.  Discussion

### a. Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;

8

> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Id.*

Additionally, it is well settled that a conclusion cannot be taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine

dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir.1997); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). Therefore, "[s]ummary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Brown v. Quality Corr. Healthcare, Inc.* 2014 WL 2916747, at *2-*3 (M.D.Ala. June 26, 2014)(*citing Beard v. Banks,* 548 U.S. 521, 525 (2006)(citation omitted). Thus, the plaintiff's *pro se* status alone does not mandate this

court's disregard of elementary principles of production and proof in a civil case.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### b. 42 U.S.C § 1983

As stated above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for the alleged delay in medical care regarding his fractured left ankle. (Doc. 1).  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

### c. Delayed, Denied or Inadequate Medical Care

Treating Nurse Craft as though officially named in Plaintiff's Complaint, and construing the Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff fails to state a claim against Nurse Craft for delayed, denied or inadequate medical care under the Eighth Amendment.

11

To prevail on a claim for inadequate medical care, an inmate must show that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97 (1976).  In *Estelle,* the Supreme Court held that a prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Estelle* at 104; *see also Campbell v. Sikes,* 169 F.3d 1353, 1363 (11th Cir. 1999)(stating "[t]he Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs").  "However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *McElligot v. Foley,* 182 F.3d 1248, 1254 (11th Cir. 1999)(citation omitted). The inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain. . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. 97, 105-06.

Thus, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  *Id.* at 106.  The provided care must be "so grossly incompetent, inadequate or excessive as to

shock the conscience of be intolerable to fundamental
fairness." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th
Cir. 1991). In fact, "once an inmate has received medical
care, courts are hesitant to find that a constitutional
violation has occurred." *Bell v. Bhadja,* 2009 WL 464083
(S.D.Fla. Feb. 24, 2009)(*citing Hamm v. DeKalb Cnty.,* 774
F.2d 1567 (11th Cir. 1986).

The Eleventh Circuit delineated the objective and
subjective portions of an Eighth Amendment claim, which
must be met in order to prove an Eighth Amendment
violation:

> An Eighth Amendment claim is said to
> have two components, an objective
> component, which inquires whether the
> alleged wrongdoing was objectively
> harmful enough to establish a
> constitutional violation, and a
> subjective component, which inquires
> whether the officials acted with a
> sufficiently culpable state of mind.

*Sims v. Mashburn,* 25 F.3d 980, 983 (11th Cir. 1994)(*citing
Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). The objective
component of the Eighth Amendment requires a plaintiff to
demonstrate that an "objectively serious medical need"
exists. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir.
2003). A serious medical need is "considered one that has
been diagnosed by a physician as mandating treatment or one

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (*citing Hill v. DeKalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)(quotation marks omitted)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (citations and quotation marks omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need.  *Farrow,* 320 F.3d at 1243.  "Deliberate indifference entails more than mere negligence.  *Estelle,* 429 U.S. at 106; *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).

The Supreme Court held that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S., 825, 837-38 (emphasis added).  However, "an official's

14

failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Therefore, "under *Estelle* and *Farmer,* deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow,* 320 F.3d 1235, 1246 (*citing McElligot,* 182 F.3d 1248, 1255)(stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

Assuming without concluding that Plaintiff's fractured ankle was a serious medical need, the Court turns to the second, subjective element of deliberate indifference. Plaintiff fails to demonstrate that any named defendant actually perceived a substantial risk of serious harm and disregarded that risk to the point that it worsened Plaintiff's fracture. In fact, the record demonstrates just the opposite. Plaintiff's injury occurred on December 22, 2014. On December 24, 2014, within 2 days of his injury (and notably, on Christmas Eve), Plaintiff was treated by Nurse Craft in the health care unit. Nurse Craft thoroughly evaluated Plaintiff taking his vital

15

signs, all of which were normal, and provided him with
temporary work restrictions until he could be seen by the
nurse practitioner on December 29, 2014.

Plaintiff was then treated by the nurse practitioner
on December 29, 2014.  An x-ray of the left ankle was
taken, a cast was placed on Plaintiff's ankle and he was
given crutches.  Plaintiff wore the cast and used the
crutches until Dr. Iliff removed the cast on February 17,
2015.  Dr. Iliff asserts his professional and medical
opinion that Plaintiff's ankle would have healed
uneventfully regardless of the fact that Plaintiff had to
wait one week to see the nurse practitioner.  Dr. Iliff
also states, based on his medical judgment, that the time
Plaintiff had to wait to receive an x-ray and cast "did not
accentuate his ankle problem of case any long-term pain or
problem for him."  (Doc. 15-1 at 4-5).  Based on this
evidence, the Court concludes that Plaintiff's injury was
not disregarded under any circumstances, and the care he
received was not so egregious that it shocks the conscience
of the Court.  The Court further concludes that Plaintiff
carries this burden of proof at trial, and he fails to
allege with significantly probative evidence that the care
provided was unconstitutional.

Furthermore, though Plaintiff disagrees with the timeliness and quality of care he received, it is well established that a difference in opinion, or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs. *See Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989); *accord Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)(disavowing any attempts to second-guess the propriety or adequacy of a particular course of treatment, as this, along with all other aspects of health care, remains a question of sound professional judgment).

Likewise, the medical malpractice or negligence by a physician allegation is insufficient to form the basis of a claim for deliberate indifference. *See Estelle,* 429 U.S. at 105-07; *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer,* 511 U.S. 825, 833-38; *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996)(stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate)(*Adams* at 1543)(stating that plaintiff must show more than mere negligence to assert an

Eighth Amendment violation); *Hill,* 40 F.3d 1176, 1191 n. 28
(11th Cir. 1994)(recognizing that Supreme Court has defined
"deliberate indifference" as requiring more than mere
negligence).

The fact that Plaintiff had to wait a few days to be
seen by the nurse practitioner does not satisfy his burden
of demonstrating conduct worthy of shocking the conscience.
The five or so days that Plaintiff waited to be seen by the
nurse practitioner is not an unreasonable or unheard of
amount of time.  Even in the free world where a person is
able to choose when they want to receive treatment, many
opt to wait that amount of time or more before choosing to
go to the doctor on a holiday.  Furthermore, many free-
world private doctors do not work at all during the
Christmas holidays forcing even unincarcerated persons to
wait that amount of time or longer before they can see
their doctor.

Based on the forgoing, the Court concludes that at no
point during the week that Plaintiff waited for care was he
treated with complete disregard to the point that it
worsened his fractured ankle.  Therefore, Defendants'
Motion for Summary Judgment is due to be granted, and any
claim for deliberate difference regarding Plaintiff's
medical care against any defendant is ripe for dismissal.

III. Supervisory Liability as to Vice President Dovey

It is well established in this Circuit that supervisory officials are not liable [] for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003)(citations omitted).  "The standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Id.*  To establish supervisory liability in this Circuit, a plaintiff must show that either the supervisor personally participated in the alleged unconstitutional conduct or that there is a "causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003).  To establish a causal connection, a plaintiff must plead facts that plausibly show a causal relationship in one of three ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, or (3) the facts support the inference that the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them

19

from doing so.  *Gonzalez* 325 F.3d at 1234-35 (citations omitted).

"While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how *overt acts* of the defendant caused a legal wrong."  *Harris,* 2014 WL 4215576, at *4 (*citing Douglas v. Yates,* 535 F.3d 1316, 1322 (11th Cir. 2008)(citation omitted)(emphasis added).  Because Plaintiff offers no proof causally connecting Dovey to the alleged deliberate indifference, and because Plaintiff fails to show how Dovey directed Corizon or Nurse Craft to act unlawfully, or knew that she would, any claim for supervisory liability is due to be dismissed with prejudice.

> IV.  Liability pertaining to Corizon, Inc.

Even if Plaintiff's Complaint had stated a valid Eighth Amendment claim for inadequate medical care against individual defendants, he cannot maintain an action against Corizon as the corporate medical provider on any basis of alleged wrongdoing.  "For § 1983 liability to attach to a private corporation providing prison medical care to prisoners, it must be shown that a prisoner's constitutional rights were violated as a result of an established policy or custom of that corporation."  *Green*

*v. Preemptive Forensic Health Solutions,* 2015 WL 1826191, at *3 (N.D. Ala. April 21, 2015 (*citing Buckner v. Toro,* 116 F.3d 450 (11th Cir. 1997).  In this instance, Plaintiff names Corizon as a defendant, but makes no allegations specific enough to satisfy the requirement that he demonstrate a corporate policy or custom as the cause of a constitutional violation.

V.   Conclusion

Accordingly, for the reasons set out above, the Court concludes that Defendants' Motion for Summary Judgment should be granted, and Plaintiff's Complaint be dismissed with prejudice on all claims alleged therein, against all Defendants.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with

the provisions of 28 U.S.C. § 636(b)(1) waives the right to
challenge on appeal the district court's order based on
unobjected-to factual and legal conclusions if the party
was informed of the time period for objecting and the
consequences on appeal for failing to object. In the
absence of a proper objection, however, the court may
review on appeal for plain error if necessary in the
interests of justice." 11th Cir. R. 3-1. In order to be
specific, an objection must identify the specific finding
or recommendation to which objection is made, state the
basis for the objection, and specify the place in the
Magistrate Judge's report and recommendation where the
disputed determination is found. An objection that merely
incorporates by reference or refers to the briefing before
the Magistrate Judge is not specific.

        DONE this 8th day of September, 2015.

                        s/BERT W. MILLING, JR
                        UNITED STATES MAGISTRATE JUDGE